IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.    5:25-CR-319 (BKS) |
| | ) | |
| **v.** | ) | **Plea and Cooperation Agreement** |
| | ) | |
| **CHO Y. CHANG,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

The United States of America, by and through its counsel of record, the United States Attorney for the Northern District of New York, Stephen C. Green, Assistant United States Attorney, and Edward P. Sullivan, Acting Chief, Public Integrity Section, Criminal Division, U.S. Department of Justice, and defendant **CHO Y. CHANG** (hereinafter "the defendant"), by and through the defendant's counsel of record, hereby enter into the following plea agreement pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure:

1) **The Defendant's Obligations:**

   a) **Guilty Plea:** The defendant will waive indictment and plead guilty to Count 1 of the Information in Case No. 5:25-CR-319 (BKS)  charging Conspiracy to Commit Bribery and Honest Services Wire Fraud, in violation of 18 U.S.C. § 371.

   b) **Special Assessment:**  The defendant will pay an assessment of $100 per count of conviction pursuant to 18 U.S.C. § 3013.  The defendant agrees to deliver a check or money order to the Clerk of the Court in the amount of $100, payable to the U.S. District Court, at the time of sentencing.

   c) **Cooperation:** The defendant will cooperate with the United States Attorney's Office for the Northern District of New York and the Public Integrity Section, Criminal Division, U.S. Department of Justice (collectively referred to hereinafter as "the United States" or

"government") in the investigation and prosecution of others, as more fully set out in Paragraph I below.

d) **Compliance with Other Terms of Agreement:** The defendant will comply in a timely manner with all the terms of this plea agreement.

e) **Restitution:**

(1) The defendant will consent to entry of an order directing the defendant's payment of restitution in full to any person or entity who qualifies as a victim of the offense of conviction under 18 U.S.C. § 3663 or § 3663A.

(2) The defendant agrees that the judgment will order restitution to be due and payable immediately subject to any payment terms set forth by the Court at sentencing and that the Clerk of the Court may release funds to victim(s) without undue delay upon receipt of restitution payments from the defendant.

(3) No Transfer of Assets:  The defendant certifies that he has made no transfer of assets in contemplation of this prosecution for the purpose of evading or defeating financial obligations that are created by this plea agreement and/or that may be imposed by the Court.  In addition, the defendant promises not to make any such transfers in the future.

f) **Forfeiture:** Pursuant to 18 U.S.C. §§ 981(a)(1)(C), 21 U.S.C. § 853(p), 28 U.S.C. § 2461(c); and Rule 32.2(a), Federal Rules of Criminal Procedure, the defendant will consent to entry of an order directing forfeiture to the United States of the property described in the Forfeiture Allegation in the Information described above, or to any substitute assets, or to a money judgment, all as more fully set out below:

(1) Money judgment in the amount of at least $275,000 and no more than $383,760.40.

g) **Access to Records:** The defendant authorizes the government to inspect and copy all financial documents and information provided by the defendant to the U.S. Probation Office, including those provided as a part of the Presentence Investigation.  If requested, the defendant will provide any privacy waivers, consents, or releases requested by the government to access records to verify the defendant's financial disclosures, and if requested will complete a further financial statement provided by the government as well as any supporting financial documentation to the government's Asset Recovery Unit(s) no later than 10 days after receiving such a request.

2) <u>**The Government's Obligations:**</u>

a) **Non-prosecution for other offenses:** For so long as the defendant's guilty plea and the sentence remain in effect, the government will not seek other federal criminal charges against the defendant based on conduct described in the Information in Case No. 5:25-CR-319 (BKS) and/or in the paragraph of this agreement entitled "Factual Basis for Guilty Plea," occurring before the date on which the defendant signs this agreement.  This agreement does not prevent the government from seeking charges based on other conduct.

b) **Compliance with Other Terms of Agreement:** The government will comply in a timely manner with all the terms of this plea agreement.

3) <u>**Potential Maximum Penalties:**</u> The defendant understands that the Court can impose the following maximum penalties for the offense to which the defendant agrees to plead guilty and may be required to impose mandatory minimum terms of imprisonment, all as set out below:

a) **Maximum term of imprisonment:** 5 years, pursuant to 18 U.S.C. § 371.

b) **Maximum fine:** $250,000, pursuant to 18 U.S.C. § 3571(b)(3).  The Court has discretion pursuant to 18 U.S.C. § 3571(b) & (d) to impose an alternative fine of the greater of

3

$250,000 or twice the pecuniary gain to the defendant or loss to any victim resulting from the offense of conviction.

c) **Supervised release term:** In addition to imposing any other penalty, the sentencing court may require the defendant to serve a term of supervised release of up to three (3) years, to begin after imprisonment. *See* 18 U.S.C. § 3583. A violation of the conditions of supervised release during that period may result in the defendant being sentenced to an additional term of imprisonment of up to two (2) years.

d) **Other adverse consequences:** Other adverse consequences may result from the defendant's guilty plea as further described in paragraph F, below.

4) **Elements of Offense:** The defendant understands that the following are the elements of the offense to which the defendant agrees to plead guilty. The defendant admits that the defendant's conduct satisfies each and every one of these elements.

(a) the defendant entered the unlawful agreement charged in the Information (*i.e.*, to commit the substantive offenses of bribery and honest services wire fraud);[1]

---

[1] The substantive offense of bribery by a public official, as alleged in the Information, includes the following: Whoever, being a public official, directly and indirectly, corruptly demands, seeks, receives, accepts, and agrees to receive and accept anything of value personally and for any other person and entity in return for being influenced in the performance of any official act and being influenced to commit and aid in committing, and collude in, and allow, any fraud, and make opportunity for the commission of any fraud, on the United States, in violation of 18 U.S.C. § 201(b)(2)(A)-(B).

The substantive offense of bribery of a public official, as alleged in the Information, includes the following: Whoever directly and indirectly, corruptly gives, offers, and promises anything of value to a public official, and offers and promises any public official to give anything of value to any other person and entity with intent to influence an official act and with intent to influence such public official to commit and aid in committing, and collude in, and allow, any fraud, and make opportunity for the commission of any fraud, on the United States, in violation of 18 U.S.C. § 201(b)(1)(A)-(B).

(b) the defendant knowingly and willfully became a member of the conspiracy;

(c) at some point during the existence of the agreement or conspiracy, at least one of its members performed at least one of the overt acts charged in the information; and

(d) at least one overt act was taken to further some objective of the conspiracy.

5)    **Factual Basis for Guilty Plea:** The defendant admits the following facts, that those facts demonstrate the defendant's guilt for the offense to which the defendant is pleading guilty, and that there are no facts establishing a viable defense to those offenses:

a)    At all times relevant to the Information in Case No. 5:25-CR-319 (BKS) , **CHANG** was a Senior Computer Scientist and Section Head of the U.S. Naval Research Laboratory's ("NRL") Integrated Communication Technology Section.  NRL, which was headquartered in Washington, D.C., served as the primary scientific and engineering research and development center for the U.S. Navy and the U.S. Marine Corps.  **CHANG's** official duties included serving as the Technical Point of Contact ("TPOC") on NRL research projects focusing on Naval telecommunications systems, conducting research, and overseeing contract awards and authorizing contract payments regarding his research projects.

---

The substantive offense of honest services wire fraud, as alleged in the Information, includes the following elements:  (1) to devise and intend to devise and participate in a scheme and artifice to defraud the public of its right to the honest services of any public official through bribery and kickbacks; (2) the scheme or artifice to defraud involved a material misrepresentation, false statement, false pretense, and concealment of fact; (3) the defendant devised and participated in the scheme knowingly and with the specific intent to defraud; and (4) in advancing, furthering, and carrying out the scheme to defraud, the defendant transmitted, and caused to be transmitted, any writing, signal, or sound by means of a wire communication in interstate or foreign commerce, in violation of 18 U.S.C. §§ 1343 and 1346.

b) CO-CONSPIRATOR A was a Senior Computer Scientist with the U.S. Air Force Research Laboratory ("AFRL") during the relevant period. AFRL, which was headquartered in Rome, New York, in the Northern District of New York, served as the primary scientific research and development center for the U.S. Air Force. CO-CONSPIRATOR A's duties included serving as the Agreement Officer's Technical Representative ("AOTR") for an AFRL program called Open Technology & Agility For Innovation ("OTAFI"). CO-CONSPIRATOR A and **CHANG** used OTAFI as a contracting vehicle for NRL projects starting in or about early 2022.

c) OTAFI used a special contract vehicle called "Other Transaction Agreements" or "OTAs." OTAs were used for advancing research and development projects or obtaining prototypes for projects from commercial sources, including nontraditional defense contractors, outside normal federal acquisition regulations and often on an accelerated, as-needed basis. NRL funded some of AFRL's OTAs. AFRL in turn received a portion of NRL's funding as a fee for administering and overseeing the OTAs. **CHANG**, on behalf of NRL, served as the TPOC for the OTAs managed by AFRL. CO-CONSPIRATOR A served as the Contracting Officer Representative ("COR") and AOTR for AFRL's OTAs.

d) COMPANY A was a technology firm operated by one of CO-CONSPIRATOR A's family members in the Northern District of New York. CO-CONSPIRATOR A assisted in creating and developing business for COMPANY A.

e) COMPANY B was a technology firm in Utah. COMPANY B received government contracts awarded through OTAFI relating to NRL projects. With **CHANG's** and CO-CONSPIRATOR A's knowledge and involvement, COMPANY B took the following actions: (a) retained COMPANY A as a subcontractor (operated by CO-CONSPIRATOR

A's family member); (b) retained CO-CONSPIRATOR A's spouse as a consultant; and (c) used AFRL administrative fees awarded by OTAFI to pay COMPANY A and CO-CONSPIRATOR A's spouse in the Northern District of New York. **CHANG** authorized these payments.

f)  CO-CONSPIRATOR B was an employee of COMPANY B.  Among other things, CO-CONSPIRATOR B oversaw COMPANY B's business development and managed the contracts awarded by OTAFI to COMPANY B relating to NRL's projects. **CHANG** and CO-CONSPIRATOR B were friends and former co-workers.

g)  Beginning in or about January 2022 and continuing until about June 2024, in the Northern District of New York and elsewhere, **CHANG**, CO-CONSPIRATOR A, and CO-CONSPIRATOR B agreed to engage in a corrupt and fraudulent scheme in which CO-CONSPIRATOR B, through COMPANY B, paid bribes and kickbacks to **CHANG** and CO-CONSPIRATOR A.  In exchange, **CHANG** and CO-CONSPIRATOR A agreed to perform and did perform official acts – and advised other officials, knowing and intending such advice to form the basis for official acts – benefitting CO-CONSPIRATOR B and COMPANY B regarding the awarding, modifying, administering, and supervising of the OTAs awarded for NRL projects.

h)  Among other things, **CHANG** and CO-CONSPIRATOR A, using a sham process, steered the solicitation and review processes for the OTAs to ensure that COMPANY B and CO-CONSPIRATOR B would: (a) receive the OTA awards over other companies; and (b) thereafter receive payments for meeting contract milestones that in many instances had nothing to do with the stated purpose of the corresponding OTA.  All of this enabled **CHANG**, CO-CONSPIRATOR A, and CO-CONSPIRATOR B, and others to defraud the

government and enrich themselves and others, including family members, as further described below.

i)   Since in or about early 2022, **CHANG** and CO-CONSPIRATOR A steered and awarded two OTAs to COMPANY B for NRL projects.  Specifically, in or about August 2022, COMPANY B received an OTA award of approximately $8.4 million, after **CHANG**, with CO-CONSPIRATOR A's assistance, selected COMPANY B over 11 other companies that had each submitted a bid for the OTA award.  In or about September 2023, COMPANY B received an OTA award of approximately $39.5 million, after **CHANG**, with CO-CONSPIRATOR A's assistance, selected COMPANY B over 12 other companies that had each submitted a bid for the OTA award.  In or about March 2024, OTAFI issued an OTA solicitation for an NRL project valued at approximately $98 million.  **CHANG** selected COMPANY A and COMPANY B to advance in the selection process over 11 other companies that had each submitted proposals for the OTA solicitation.  AFRL suspended this OTA before it was awarded, however.

j)   In exchange for **CHANG** and CO-CONSPIRATOR A's official assistance, COMPANY B and CO-CONSPIRATOR B used NRL funds awarded through OTAFI and AFRL to provide a stream of payments and other things of value to **CHANG**, CO-CONSPIRATOR A, and their respective family members during a period when COMPANY B was seeking OTAs through OTAFI.  With CO-CONSPIRATOR A's knowledge and involvement, **CHANG** approved the payments and other things of value for himself, CO-CONSPIRATOR A, and their respective family members.

k)   The benefits **CHANG** received included travel reimbursement for himself and family members totaling at least approximately $225,000 to at least approximately $283,760.40.

l)  To conceal from the government and others the fact that his claimed travel expenses included family members, **CHANG** often used his personal (non-government) email account and submitted fake airline and hotel receipts to COMPANY B, falsely claiming that other NRL employees were traveling with him or by themselves.

m)  **CHANG**'s reimbursement requests included several trips to New York City to see a family member; several trips to San Francisco to see another family member; and several trips to various locations accompanied by his spouse.  On approximately 21 trips, **CHANG** "double-dipped" by also submitting a voucher to his official government travel system, thereby seeking a second 'reimbursement' for the same trips paid by COMPANY B. **CHANG** often "double-dipped" to cover the extra cost of having a family member travel with him.  These travel practices also increased **CHANG**'s point totals in hotel and airline loyalty programs.

n)  The benefits obtained by **CHANG** also included approximately $50,000 to $100,000 in personal items that he submitted to COMPANY B for purchase using NRL funds awarded through the OTAs.  **CHANG** frequently had these goods shipped to his residence or the residences of his family members.  The personal items included, among other things, Apple iPhones; computer monitor(s); cellular telephone activation fees; monogrammed luggage; wireless routers, networks and related technology; household products; passport photos; and airlines club membership dues.

o)  **CHANG** also authorized COMPANY B to use NRL funds awarded through OTAs to pay for approximately $150,000 to $170,406.48 in things of value, mostly for personal use (home renovation tools, tool bags, and Apple products such as iPhones and accessories,

watches, AirPods, and laptops), shipped to CO-CONSPIRATOR A's residence or the residences of CO-CONSPIRATOR A's family members.

p) In furtherance of the conspiracy and to effect its objects, **CHANG**, CO-CONSPIRATOR A, CO-CONSPIRATOR B, and others took overt acts in the Northern District of New York and elsewhere, as set forth in the Information, for the purpose of executing the scheme. These steps included causing wire communications to be transmitted in interstate commerce.

6) **<u>Sentencing Stipulations:</u>**

a) The parties agree that pursuant to U.S.S.G. § 2C1.1(a)(1), the defendant's base offense level for a public official is 14.

b) The parties agree that pursuant to U.S.S.G. § 2C1.1(b)(1), the defendant's base offense level is increased by 2 levels because the offense involved more than one bribe.

c) The parties agree that pursuant to U.S.S.G. §§ 2C1.1(b)(2) and 2B1.1, the defendant's base offense level is increased by 12 levels because the value of the payment received totaled more than $250,000 but is less than $550,000.

d) The government's position is that a 4-level enhancement to the applicable federal sentencing guidelines offense level is appropriate pursuant to U.S.S.G. § 2C1.1(b)(3) as the defendant was a public official in a high-level decision-making or sensitive position. The defendant's position is that this enhancement does not apply. The parties reserve the right to argue the applicability of this enhancement in their sentencing memoranda and at sentencing.

e) The parties agree that the defendant's base offense level is decreased by 2 levels, pursuant to U.S.S.G. § 4C1.1(a), because the defendant is a zero-point offender.

f)   The government will recommend a 2-level downward adjustment to the applicable federal sentencing guidelines offense level pursuant to U.S.S.G. § 3E1.1(a) if, (i) through the time of sentencing, the government is convinced that the defendant has demonstrated "acceptance of responsibility" for the offense(s) to which the defendant is pleading guilty and all relevant conduct, as defined in U.S.S.G. § 1B1.3; and (ii) the government does not determine that the defendant, after signing this agreement, committed any other federal, state, or local crimes, or engaged in conduct that constitutes "obstruction of justice," as defined in U.S.S.G. § 3C1.1.

g)   The government will move for a 1-level downward adjustment to the applicable federal sentencing guidelines offense level pursuant to U.S.S.G. § 3E1.1(b) if the government is convinced that the defendant has accepted responsibility within the meaning of U.S.S.G. § 3E1.1(a) and further assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, and the defendant otherwise qualifies for such adjustment by having a combined offense level of 16 or more before receipt of any acceptance of responsibility adjustment under U.S.S.G. § 3E1.1(a).

These stipulations are non-exhaustive. Both parties retain the right to urge the sentencing Court to find that a particular offense level, criminal history category, ground for departure, or guidelines range applies. Both parties may advocate for the application of guideline provisions other than those stipulated to.

The stipulations do not constitute either party's estimate of what the defendant's total offense level, criminal history category, or guidelines range will be. Even if the stipulations match either party's current expectations of the total offense level, criminal history category, or guidelines range, and even if those expectations have been communicated, both parties remain free to determine for any reason, even based on information already in their possession, that guideline provisions other than those stipulated to also apply and advocate for those provisions.

Under certain circumstances, the defendant's criminal history may affect the defendant's offense level under the federal sentencing guidelines. Should the presentence investigation reveal prior criminal convictions, or details regarding prior criminal convictions, of which the government lacked actual knowledge at the time it signed this agreement, the parties are not bound by any stipulations to guideline provisions affected by the defendant's criminal history and may advocate with respect to how the defendant's criminal history affects the offense level.

7) **Waiver of Rights to Appeal and Collateral Attack:** The defendant waives (gives up) any and all rights, including those conferred by 18 U.S.C. § 3742 and/or 28 U.S.C. §§ 2241 and 2255, to appeal and/or to collaterally attack the following:

a) The conviction(s) resulting from the defendant's guilty plea;

b) Any term of imprisonment of 60 months or less;

c) Any sentence to a fine within the maximum permitted by statute;

d) Any sentence to a term of supervised release within the maximum permitted by statute;

e) Any condition of supervised release on any ground (including procedural or substantive unreasonableness) that the defendant did not raise in the District Court despite both (i) notice in the presentence investigation report that the Probation Office had recommended the condition and (ii) an opportunity to object in the District Court;

f) Any order of forfeiture or restitution imposed by the Court that is consistent with governing law and is not contrary to the terms of this agreement; and

g) Any special assessment permitted by statute.

Nothing in this appeal waiver is meant to be or should be construed as a representation of or agreement concerning the appropriate sentence in this case. The Government and the defendant agree that this waiver applies regardless of whether any term of imprisonment is imposed to run consecutively to or concurrently with, in whole or in part, the undischarged portion of any other sentence that has been imposed on the defendant at the time of sentencing in this case. If the court imposes a term of imprisonment at or below the number of months specified above, the defendant's waiver of appeal and/or collateral attack includes any claim of procedural or substantive error in the determination or imposition of the term of imprisonment. If the court imposes a term of supervised release and/or a fine within the maximum permitted by statute, the defendant's waiver of appeal and/or collateral attack includes any claim of procedural or substantive error in the determination or imposition of the term of supervised release and/or fine. The defendant further waives the right to raise on appeal or on collateral review any claim that (a) the statute(s) to which the defendant is pleading guilty is(are) unconstitutional and (b) the admitted conduct does not fall within the scope of the statute(s). The defendant does not waive the right to raise a claim of ineffective assistance of counsel in an appeal or collateral attack on his conviction and sentence.

A. **<u>Right to Counsel:</u>** The defendant has the right to be represented by counsel—and if necessary have the court appoint counsel—at trial and at every other stage of the proceeding. Defense counsel has advised the defendant of nature of the charges to which the defendant is agreeing to plead guilty and the range of possible sentences.

B. **<u>Waiver of Trial-Related Rights:</u>** The defendant has the following additional constitutional rights in connection with the charges in this case: (i) to be presumed innocent until proven guilty beyond a reasonable doubt; (ii) to plead not guilty; (iii) to trial by jury; (iv) to confront, cross-examine, and compel the attendance of witnesses at trial; (v) to present defense evidence; and (vi) to remain silent and be protected against compelled self-incrimination. The defendant understands that by pleading guilty, the defendant waives (gives up) these rights.

C. **<u>Court Not Bound by Plea Agreement:</u>** This plea agreement is made pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure. The Court is neither a party to, nor bound by this Plea Agreement. The Court may accept or reject this Plea Agreement or defer a decision until it has considered the Presentence Investigation Report prepared by the United States Probation Office. If the Court rejects the provisions of this agreement permitting the defendant to plead guilty to certain charges in satisfaction of other charges, the Court will permit the defendant to withdraw the plea of guilty before sentencing, pursuant to Fed. R. Crim. P. 11(c)(5) & (d).

D. **<u>Court Not Bound by Agreed-Upon Recommendations, Stipulations, and Requests:</u>** If this agreement contains any provisions under Fed. R. Crim. P. 11(c)(1)(B) by which the government agrees to recommend, stipulates, or agrees not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate or that a particular provision of the federal sentencing guidelines, or a policy statement, or sentencing factor does or does not apply, such a recommendation, stipulation, or request does not bind the Court, which may make independent factual findings by a preponderance of the evidence and may reject such recommendations, requests, and stipulations between the parties. If the Court rejects one or more recommendations, stipulations, or requests, the defendant is not entitled to withdraw the

defendant's plea of guilty and is not released from the obligations described in this agreement. Under such circumstances, the government reserves the right to support and defend, in connection with any post-sentencing proceedings, any decision the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations, stipulations, or requests set out in this agreement.

E. **Sentencing:**

a. **Maximum terms of imprisonment:**  The defendant understands that the Court has discretion to impose a sentence within the statutory maximum sentence(s) set out in this agreement.  If the defendant is pleading guilty to multiple charges, the Court may be required by law to have the sentences of imprisonment on the convictions resulting from those charges run consecutively to each other.  Otherwise, the Court has discretion to have sentences of imprisonment run concurrently or consecutively.  *See* 18 U.S.C. § 3584.

b. **Mandatory minimum terms of imprisonment:**  If specified in this agreement, the conviction on one or more charges to which the defendant has agreed to plead guilty may require imposition of a mandatory minimum term of imprisonment.  In such cases, the court must impose a term of imprisonment no less than the required mandatory minimum term unless an exception to that requirement applies.  Such exception may be dependent on a motion by the government.

c. **Section 851 Enhancements**: The defendant understands that if the government has filed an information against the defendant as provided in 21 U.S.C. § 851, alleging that the defendant has one or more final convictions for a felony drug offense, and, as part of this agreement, the defendant has admitted and/or affirmed that the defendant was so convicted,

15

then, by pleading guilty, the defendant will lose the right to attack any sentence the court imposes by challenging any such prior conviction.

d. **Sentencing guidelines:**

i. The actual sentence to be imposed upon the defendant is within the discretion of the sentencing Court, subject to the statutory maximum and mandatory minimum penalties, as described above, and the provisions of the Sentencing Reform Act and the United States Sentencing Guidelines promulgated thereunder. While the Court is not bound to impose a sentence within the applicable sentencing guidelines range, it must take into account the sentencing guidelines, along with the other factors set forth in 18 U.S.C. § 3553(a).

ii. Any estimate of the defendant's offense level, criminal history category, and sentencing guidelines range provided before sentencing is preliminary and is not binding on the parties to this agreement, the Probation Office, or the Court. Until the Probation Office has fully investigated the defendant's criminal history, it is not possible to predict with certainty the defendant's criminal history category and, in some cases, the defendant's offense level.

iii. Under certain circumstances, the defendant's criminal history may affect the defendant's offense level under the federal sentencing guidelines. If the presentence investigation reveals that the defendant's criminal history may support an offense level different than an offense level stipulated in this agreement, the parties are not bound by any such stipulation as to the defendant's offense level and may advocate with respect to how the defendant's criminal history affects the offense level.

e. **Factual findings:** The defendant understands that the sentencing Court may make factual findings with respect to any and all sentencing factors and issues, including those referenced in the United States Sentencing Guidelines, whether or not such factors or issues have been admitted by the defendant or stipulated by the parties. In making those findings by a preponderance of the evidence, the Court may consider any reliable evidence, including hearsay. The Defendant understands that the sentence imposed may be determined based upon such judicial fact-finding.

f. **Use of the Defendant's Statements:** The defendant understands that the sentencing court may consider any statement that the defendant has made or makes in this Plea Agreement, during the guilty plea, to the Probation Office, and at sentencing when imposing sentence. In addition the government may be able to use the defendant's statements in this agreement and at the guilty plea and at sentencing in any criminal, civil, or administrative proceeding. For example, if the defendant fails to enter a guilty plea (as required by this agreement) or the defendant's guilty plea is later withdrawn or vacated for any reason other than the Court's rejection of this Plea Agreement under Fed. R. Crim. P. 11(c)(5), the government may introduce the defendant's statements into evidence in any prosecution. If, however, the Court rejects this Plea Agreement under Fed. R. Crim. P. 11(c)(5), and the defendant withdraws the guilty plea pursuant to Fed. R. Crim. P. 11(d)(2)(A), the government will not be permitted to use any of the defendant's statements in this Plea Agreement. To the extent that Rule 11(f) of the Federal Rules of Criminal Procedure and/or Rule 410 of the Federal Rules of Evidence are inconsistent with this paragraph, the defendant waives (gives up) any protections under those rules.

g. **Government's Discretion to Recommend a Sentence:**  Unless a stipulation in this agreement explicitly limits the government's discretion with respect to its recommendations at sentencing, this agreement does not prevent the government from urging the sentencing Court to find that a particular offense level, criminal history category, ground for departure, or guidelines range applies; from recommending a specific sentence within the applicable guidelines range as determined by the Court or as urged by the government; or, if the government deems appropriate, recommending that the Court impose a sentence above the applicable guidelines range.

h. **Sentencing-Related Information:**  The government has the right to advise the sentencing Court and the Probation Office of any information, in aggravation or mitigation of sentencing, whether or not encompassed within the count(s) to which the defendant has agreed to plead guilty, subject only to the limitation described in U.S.S.G. §1B1.8.  No stipulation in this plea agreement limits the obligations of both parties to ensure that the sentencing Court has all information pertinent to its determination of an appropriate sentence.  The parties may provide any factual information relevant to sentencing to the Probation Office and/or to the Court, without limitation, before or after the completion of the Presentence Investigation Report.  The parties agree that the submission of such information shall not be deemed "advocacy" in violation of any stipulation in this plea agreement.

i. **Supervised Release Term and Conditions:** If the defendant is placed on supervised release, under some circumstances, including the defendant's violation of one or more supervised release conditions, the Court may extend the term of supervised release, and may modify, reduce, or enlarge the conditions of such release.

18

F. **Other Adverse Consequences:** The following are some examples of the adverse consequences of pleading guilty other than the sentence imposed by the Court, along with any judicial order of forfeiture and/or restitution:

a. Conviction of a felony may result in the loss of civil rights, including, but not limited to, the right to vote and the right to possess firearms.

b. If the defendant is not a United States citizen, such conviction may result in deportation or removal from the United States, may bar readmission to the United States if the defendant leaves the country, and may result in a denial of a pending or future application for citizenship. If the defendant is a naturalized United States citizen, such conviction may result in denaturalization, followed by deportation or removal from the United States. Under federal law, removal or deportation may be an almost certain consequence of a conviction for a broad range of federal offenses, including, but not limited to, aggravated felonies, as defined in 8 U.S.C. § 1101(a)(43), and crimes of moral turpitude, which includes crimes involving fraud. Removal and other immigration consequences are the subject of a separate proceeding. No one, including the defendant's attorney and the Court, can predict with certainty the effect of the conviction resulting from this agreement on the defendant's immigration status. The defendant understands this uncertainty and nonetheless wishes to plead guilty regardless of any immigration consequences that the guilty plea may entail, even if the consequence is the defendant's automatic removal from the United States.

c. A felony conviction may adversely affect the defendant's ability to hold certain professional licenses and may impair the defendant's ability to do business with federal, state, and local governments or to receive benefits from such governments.

There may be other adverse consequences as well, some of them unforeseeable. It may be difficult or impossible to predict all of the adverse consequences of the defendant's guilty plea. The defendant agrees that any resulting adverse consequences, whether or not foreseen or foreseeable, will not provide a basis for withdrawing from the guilty plea described in this agreement or otherwise challenging the resulting conviction and sentence.

G. **Restitution:** Independent of any agreement to pay restitution, and whether there is any such agreement, the sentencing Court may be required to order that the defendant pay restitution to any victim of the offense(s) of conviction under the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A. In addition, the sentencing Court may have the authority to order that the defendant pay restitution to any victim of the offense(s) of conviction pursuant to 18 U.S.C. §§ 3663 & 3664. In any case involving a conviction for a sexual exploitation offense in chapter 110 of title 18 of the United States Code, the Court must order restitution for the full amount of the victim's losses as determined by the court. The victim's losses include, but are not limited to medical services related to physical, psychiatric, or psychological care; physical or occupational therapy or rehabilitation; necessary transportation, temporary housing, and child care expenses; lost income; attorney's fees and other costs; and any other losses suffered by the victim as a proximate result of the offense. The restitution payment will be in addition to any other civil or criminal penalty authorized by law.

H. **Forfeiture:** If the defendant has agreed to forfeiture of assets, the defendant agrees to the following terms and conditions:

a.   The defendant hereby forfeits, to the United States, all right, title, and interest of any nature in any and all assets that are subject to forfeiture, including substitute assets, as set forth

above, whether those assets are in the possession or control of the defendant, a nominee, or some other third party.

b.  The defendant consents to the entry of an order of forfeiture of the assets described above.

c.  The defendant is aware that pursuant to Rule 32.2(b)(4)(A) of the Federal Rules of Criminal Procedure, a preliminary order of forfeiture becomes final as to a given defendant at sentencing or at any time before sentencing if the defendant consents.  The defendant consents that the preliminary order of forfeiture in this case shall become final as to the defendant before sentencing, as of the date the preliminary order of forfeiture is entered by the Court.  The defendant understands that the government, upon entry of the preliminary order of forfeiture, will address any potential third party claims pursuant to Rule 32.2(c), and seek to finalize forfeiture.

d.  Forfeiture of the defendant's assets will not satisfy all, or any portion of, a fine, restitution, or other monetary penalty that the Court may impose upon the defendant in addition to forfeiture.  Satisfaction of all, or any portion of, any restitution, fine, or other penalty that the Court may impose upon the defendant in addition to forfeiture will not satisfy all, or any portion of, any forfeiture judgment ordered by the Court.

e.  In the event that any successful claim is made, by any third party, to the assets described above, the defendant agrees to forfeit substitute assets equal in value to the assets transferred to any such third party.  The defendant agrees that forfeiture of substitute assets shall not be deemed an alteration of the Defendant's sentence.

f.  The defendant agrees to cooperate with the United States by taking whatever steps are necessary to pass clear title to the United States of any forfeitable assets, including but not limited to, surrendering title; completing any documents or legal proceedings required to

transfer assets to the United States; and taking necessary steps to ensure that assets subject to forfeiture are not sold, disbursed, expended, destroyed, damaged, hidden or otherwise made unavailable for forfeiture or removed beyond the jurisdiction of the Court.

g.  The defendant waives the right to a jury trial on the forfeiture of assets.  The defendant waives all constitutional, legal, and equitable defenses to the forfeiture of assets, as provided by this agreement, in any proceeding, including but not limited to any jeopardy defense or claim of double jeopardy or any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of an excessive fine.

h.  The defendant acknowledges that the government may institute civil or administrative proceedings against any or all of the defendant's forfeitable assets, including, but not limited to substitute assets and any forfeitable assets not identified by the defendant, and agrees not to contest any such forfeiture proceedings.

i.  The defendant represents and warrants that the defendant has no direct or indirect interest in any property, real or personal, or other asset subject to forfeiture by virtue of this plea agreement, other than those listed above.

j.  The defendant acknowledges joint and several liability for the amount of any money judgment set forth above.

k.  In the event the government determines that the defendant has breached any condition of this plea agreement, none of the forfeited property shall be returned to the defendant, nor shall the defendant assert any claim to the forfeited property.  The defendant shall not reacquire any forfeited property, directly or indirectly, through family members, nominees, friends, or associates.

I.  **Cooperation:** If the defendant has agreed in writing to cooperate with the government, the following terms and conditions apply:

    a.  The defendant will cooperate fully with the United States Attorney's Office, the Public Integrity Section, Criminal Division, U.S. Department of Justice ("Public Integrity Section"), and law enforcement agencies that the United States Attorney's Office and Public Integrity Section designate, in any manner requested, in any criminal investigation.

    b.  The defendant will truthfully disclose all information with respect to the activities of the defendant and others about all matters that the United States Attorney's Office, Public Integrity Section, and law enforcement agencies they designate inquire.

    c.  The defendant will testify truthfully and completely before the grand jury and/or at any trial or other proceeding with respect to any matters about which the defendant may be questioned.

    d.  The defendant will, at all times, give complete, truthful, and accurate information and testimony.  The defendant will not attempt to protect any person who has been involved in criminal activity, nor will the defendant falsely implicate anyone in criminal activity.  The defendant will not minimize, exaggerate, or conceal the criminal conduct of the defendant or any other person.

    e.  The defendant will not reveal the defendant's cooperation or any information with respect to any related investigation or prosecution to anyone other than the defendant's attorney, without the prior consent of the United States Attorney's Office and the Public Integrity Section.

    f.  The defendant is entitled to have an attorney present at any session during which the defendant provides testimony, information, or other cooperation to the United States

Attorney's Office, the Public Integrity Section, or any designated law enforcement agency pursuant to this agreement. The defendant hereby waives the right to have an attorney present at such sessions unless and until the defendant or the defendant's attorney informs the Assistant United States Attorney, Public Integrity Section attorney, or designated law enforcement agent that the attorney's presence is desired.

g.  The defendant consents to adjournments of sentencing pending the completion of the defendant's cooperation, as determined to be necessary by the United States Attorney's Office.

h.  The defendant will not violate any federal, state, or local law or condition of release or supervision imposed by the Court between the time the defendant signs this agreement and the date of sentencing.

i.  Any self-incriminating statements the defendant makes while cooperating pursuant to this agreement may not be introduced by the government in its case-in-chief against the defendant in a further criminal prosecution except in (i) a prosecution for perjury, making a false statement, or obstruction of justice; (ii) a prosecution for any crime of violence or act of terrorism; or (iii) any prosecution of the defendant permitted under this agreement as a result of the defendant's failure to comply with the terms of this plea agreement. Further, such self-incriminating information will not be used in determining the applicable Sentencing Guidelines range, pursuant to U.S.S.G. §1B1.8.

j.  At or before sentencing, the United States Attorney's Office will advise the Court of the nature and extent of the cooperation and assistance provided by the defendant pursuant to this Agreement. If the United States Attorney's Office and Public Integrity Section determine, in their sole discretion, that the defendant has provided "substantial assistance"

in the investigation or prosecution of one or more other persons who have committed offenses, they may, in their sole discretion, credit the defendant in one or more of the following ways: (i) move for a downward departure pursuant to either or both U.S.S.G. §5K1.1 and/or 18 U.S.C. § 3553(e); or (ii) move to dismiss one or more charging informations the government has filed pursuant to 21 U.S.C. § 851 concerning the defendant's conviction for one or more felony drug offenses that trigger enhanced penalty provisions in Title 21 of the United States Code, in any case in which the government has filed such information(s).   However, the United States Attorney's Office and Public Integrity Section do not promise or guarantee that they will make such motion(s) for departure or to dismiss.   Whether and how to credit any proffered cooperation and assistance is within the sole discretion of the United States Attorney's Office and the Public Integrity Section.

k.  In deciding whether the defendant has provided "substantial assistance" warranting a motion for a downward departure under U.S.S.G. §5K1.1 and/or 18 U.S.C. § 3553(e) or a motion to dismiss allegations concerning one or more felony drug convictions, the United States Attorney's Office and Public Integrity Section may consider any fact that, in their sole discretion, they deem relevant, including facts known at the time of the execution of this plea agreement.

l.  However, the decision of the United States Attorney's Office and Public Integrity Section whether to make a motion for a downward departure or to dismiss drug conviction allegations will not be affected in in any way by a grand jury's decision whether to return an indictment or a jury's verdict at trial.   Thus, the defendant will not be rewarded in any way for a grand jury's decision to return an indictment or a trial jury's decision to return a

guilty verdict. Similarly, the defendant will not be denied the benefit of such motion(s) merely because a grand jury decides not to return an indictment or a trial jury decides not to return a guilty verdict or cannot return any verdict.

m. If the sentencing of the defendant is conducted before the defendant has, in the judgment of the United States Attorney's Office and Public Integrity Section, completed cooperation, the United States Attorney's Office and Public Integrity Section may, in their sole discretion, decline to make a motion for a downward departure or to dismiss drug conviction allegations and defer its determination as to whether the defendant has provided "substantial assistance" warranting a motion for a downward departure under Fed. R. Crim. P. 35(b) for up to one year after sentencing.

n. Should the United States Attorney's Office and Public Integrity Section decide to make a motion for downward departure pursuant to either or both U.S.S.G. §5K1.1 and/or 18 U.S.C. § 3553(e), its recommendation as to the extent of such a departure is a matter within the sole discretion of the United States Attorney and the Public Integrity Section.

o. Even if a motion for departure is made by the United States Attorney's Office, based upon the defendant's perceived "substantial assistance," the final decision as to how much, if any, reduction in sentence is warranted because of that assistance rests solely with the sentencing Court, subject to any statutory minimum penalty, which will limit the extent of any departure in the event the United States Attorney's Office, in its sole discretion, declines to make a motion for a downward departure under 18 U.S.C. § 3553(e). Further, even if the United States Attorney's Office makes a motion to dismiss an information concerning felony drug conviction, the defendant may still be subject to a statutory

minimum term of imprisonment that will limit the sentencing Court's discretion to impose sentence.

**J.  Determination of Financial Condition and Payment of Interest and Penalties:**

    a.  In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees fully to disclose all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party.

    b.  The defendant will promptly submit a complete, accurate, and truthful financial statement to the United States Attorney's Office, in a form it provides and as it directs.

    c.  The defendant authorizes the United States Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

    d.  Interest and penalties may accrue, as a matter of law, on any unpaid financial obligation imposed as part of the defendant's sentence, from as early as the date of sentencing.

**K.  Remedies for Breach:**

    a.  Should the government determine that the defendant, after the date the defendant has signed this plea agreement, (i) has committed any further crime or violated any condition of release or supervision imposed by the Court (whether or not charged); (ii) has given false, incomplete, or misleading testimony or information; or (iii) has moved to withdraw the defendant's guilty plea for reasons other than those described in this agreement or otherwise has breached any term or condition of this plea agreement or supplemental

agreements with the government, the government will have the right, in its sole discretion, to void this agreement, in whole or in part. In the event of such breach, the defendant will remain obligated to plead guilty and otherwise comply with the terms of this agreement and will not be permitted to withdraw the defendant's guilty plea under this agreement. The defendant will be subject to prosecution for any federal criminal violation of which the government has knowledge, including but not limited to charges that this Office has agreed to dismiss or not to prosecute under this agreement.

b.  If the defendant breaches this agreement, the government will have the following remedies, among others, available to it:

    i.   To bring prosecution for any federal criminal offenses dismissed or not prosecuted under this agreement. The defendant waives (gives up) any defense or objection to the commencement of any such prosecution that is not time-barred by the applicable statute of limitations as of the date on which the defendant signed this plea agreement, notwithstanding the expiration of the statute of limitations between the signing of the agreement and the commencement of any such prosecution.

    ii.  In connection with any such prosecution, any information, statement, and testimony provided by the defendant, and all leads derived therefrom, may be used against the defendant, without limitation and without regard to any rights the defendant may have under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410.

    iii. To utilize any information, statement, or testimony provided by the defendant in any proceeding, including at sentencing, notwithstanding U.S.S.G. §1B1.8;

iv. To advocate if, and how, any particular adjustment or specific offense characteristic affects the applicable Sentencing Guidelines range without regard to any contrary stipulations contained in this agreement;

v. To refrain from making any sentencing-related motion favorable to the defendant without regard to any provision in this agreement obligating the government to consider making or make such motion upon fulfillment of certain conditions;

vi. To urge the sentencing Court to take the defendant's breach into account when imposing sentence;

vii. To recommend any sentence the government deems appropriate, even if such recommendation is at odds with any stipulation in this agreement.

L. **Limitations:** This agreement is between the United States Attorney's Office for the Northern District of New York and United States Department of Justice, Criminal Division, Public Integrity Section, and the defendant.  References to "the government" in this agreement refer only to the Department of Justice components specifically identified above.  This agreement does not bind any other federal, state, or local prosecuting authorities.  Furthermore, this agreement does not prohibit the United States, any agency thereof, or any third party from initiating or prosecuting any civil or administrative proceedings directly or indirectly involving the defendant, including, but not limited to, proceedings by the Internal Revenue Service relating to potential civil tax liability, proceedings relating to the forfeiture of assets, and proceedings by the Department of Homeland Security, Bureau of Citizenship and Immigration Services relating to the immigration status of the defendant.

M. **Agreement Must be Signed; Modifications Must be Written or on the Record:** This agreement, to become effective, must be signed by all of the parties listed below.  No promises,

agreements, terms, or conditions other than those set forth in this plea agreement will be effective unless memorialized in writing and signed by all parties or confirmed on the record before the Court.

N. **Agreement to Plead Guilty Voluntary:** The defendant acknowledges reading each of the provisions of this plea agreement with the assistance of counsel and understands its provisions. The defendant further acknowledges that the defendant's agreement to plead guilty is voluntary and did not result from any force, threat, or promises (other than the promises in this plea agreement and any written supplemental agreements or amendments).

JOHN A. SARCONE III
Acting United States Attorney


STEPHEN C. GREEN
Assistant United States Attorney
Bar Roll No. 507767


EDWARD P. SULLIVAN
Acting Chief, Public Integrity Section
Criminal Division
U.S. Department of Justice

August 1, 2025
Date


CHO Y. CHANG
Defendant

August 1, 2025
Date


CHRISTOPHER MADIOU
Attorney for Defendant
Bar Roll No. 706454

August 1, 2025
Date

30